FILED

2017 Jan-18  AM 10:45
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER FUQUA, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No.  3:16-cv-01510-HGD |
| | ) | |
| R. MARSHALL HESS, et al., | ) | |
| | ) | |
| Defendants | ) | |

## MEMORANDUM OPINION AND PARTIAL DISMISSAL ORDER

The above-entitled civil action is before the court on the Motion to Dismiss filed by defendants City of Sheffield, Alabama, and the Sheffield Police Department (Doc. 11) and the Motion to Dismiss filed by defendant R. Marshall Hess (Doc. 17). Plaintiff has filed a response to each motion (Docs. 19 & 22), and defendants have filed replies (Docs 21 & 23).

### MOTION TO DISMISS STANDARD

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pled facts alleged by in the complaint as true.  Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal

conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  In evaluating the sufficiency of a plaintiff's pleadings, a court can make reasonable inferences in plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, 556 U.S. at 681, 129 S.Ct. at 1951 (stating conclusory allegations are "not entitled to be assumed true").

A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. *See Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1950 (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-62, 570, 127 S.Ct. 1955, 1968-69, 1974, 167 L.Ed.2d 929 (2007) (retiring the prior "unless it appears beyond doubt that the plaintiff can prove no set of facts" standard). In *Twombly*, the Supreme Court emphasized a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965.  Factual allegations in a complaint need not be detailed

but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555, 127 S.Ct. at 1964-65 (internal citations and emphasis omitted).

In *Iqbal*, the Supreme Court reiterated that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949.  A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss. *Id*.  The well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974.

## The Complaint

Plaintiff alleges that on September 13, 2014, he was at his residence, unloading groceries from his car with the help of his children.  Defendant Hess stopped his vehicle at plaintiff's house and told plaintiff he was responding to a domestic disturbance call.  Plaintiff said he did not know what Hess was talking about and turned to go into the house.  Plaintiff alleges that Hess followed him, tripped him

from behind, and grabbed his arm. The children ran into the house, and plaintiff called for his wife and everyone in the residence to come out. Plaintiff's wife asked Hess what was going on. Plaintiff told his sister to record what was happening, so the family members on the porch went into the house to get a recording device. While the family members were inside, Hess deployed his taser on plaintiff and told him to lie on the ground. Plaintiff told Hess he could not lie on the ground because the taser wires were in his chest. Plaintiff put his hands behind his back, and Hess again deployed his taser, pulled plaintiff off the ground, placed handcuffs on him, and placed plaintiff in the back of his patrol car. Plaintiff was arrested for disorderly conduct and resisting arrest. Plaintiff went to trial, but the charges were dismissed on the prosecutor's motion.

Plaintiff also includes allegations about incidents which occurred on December 19, 2014, between William Gibbs and Sergeant Ray Terry of the Sheffield Police Department, and on April 18, 2016, between Cheryl Jarmon-Goodman and unnamed police officers from the Sheffield and Muscle Shoals police departments. Plaintiff alleges that the officers involved in these incidents unlawfully arrested and used excessive force on Gibbs and Jarmon-Goodman.

Plaintiff asserts causes of action pursuant to 42 U.S.C. § 1983 against defendants Hess, the City of Sheffield and the Sheffield Police Department for

violation of the Fourth Amendment by an unlawful search and seizure (Count One),

violation of the Fourteenth Amendment by the use of excessive force (Count Two),

and violation of the Fourth Amendment and due process by false arrest (Count

Three).[1]   Plaintiff asserts state law causes of action against Hess in his individual

capacity pursuant to *Ala. Code* § 6-5-170 for false arrest (Count Four) and false

imprisonment (Count Five), as well as claims for assault and battery (Count Six) and

outrage (Count Seven).   Finally, plaintiff asserts a cause of action pursuant to 42

U.S.C. § 1983 (apparently invoking the Fourth and Fourteenth Amendments) against

the City of Sheffield and the Sheffield Police Department for failure to supervise and

failure to train (Count Eight).[2] [3]

---

[1] In the "Jurisdiction" section of the complaint, plaintiff invokes the Eighth Amendment (Doc. 1 at 1); however, he makes no separate claim for violation of the Eighth Amendment in the body of the complaint.  Even if the court reads the complaint as asserting a claim for violation of the Eighth Amendment, such a claim would be subject to dismissal because plaintiff was not a convicted prisoner at the time of the events alleged in the complaint.  *See Ingraham v. Wright*, 430 U.S. 651, 667-68 (1977); *Hamm v. DeKalb County*, 774 F.2d 1567, 1572 (11th Cir. 1985).

[2] In the "Parties" section of the complaint, plaintiff avers that he is suing Hess in Counts One through Seven.  (Doc. 1 at 2).  However, in Count Eight itself, plaintiff states he is bringing the claim against Hess, the Sheffield Police Department and the City of Sheffield.  (*Id.* at 13).  The court will assume that Hess is not a defendant as to Count Eight because it would be nonsensical to sue Hess for failure to supervise or train himself.

[3] Count Eight is construed to assert the City is liable for the allegedly unconstitutional actions of Officer Hess based on its alleged failure to supervise or train its employees under an alternative theory of municipal liability set out in *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989).

**DISCUSSION**

## I.      Sheffield Police Department

The motion to dismiss this action as to defendant Sheffield Police Department is well taken and due to be granted.  The law is clear that a police department is not a legal entity subject to suit under 42 U.S.C. § 1983 and therefore is not a proper defendant in this action.  *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992); *Howard v. City of Demopolis*, 984 F.Supp.2d 1245, 1253 (S.D.Ala. 2013) (holding that the municipality, and not its police department, was the proper party to the lawsuit); *Hawkins v. City of Greenville*, 101 F.Supp.2d 1356, 1363 (M.D.Ala. 2000) (same).

## II.     City of Sheffield

### A.      Punitive Damages

The City of Sheffield is immune from liability for punitive damages for any claims under 42 U.S.C. § 1983 (Counts One, Two, Three and Eight).  *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).  Therefore, any claims against the City of Sheffield for punitive damages are due to be dismissed.

**B.     42 U.S.C. § 1983 Claims**

**1.     Counts One, Two and Three**

The City has argued that Counts One, Two and Three are due to be dismissed as against it because plaintiff has not pled sufficient facts to impose liability on the municipality under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

Under § 1983, "a municipality cannot be held liable *solely* because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Instead, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. Accordingly, "to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

In an attempt to allege a municipal policy or custom, plaintiff has included allegations about two other incidents involving other persons' encounters with

members of the Sheffield Police Department.  (Doc. 1 at 3-6).  In addition, within

Count One, plaintiff alleges:

> 21.  As described above in the numerous instances involving the Sheffield Police Department, the City of Sheffield has a long-held custom of and has long been deliberately indifferent to violating its citizens' rights.  The Sheffield Police Department has long been improperly managed, and the direct result of the intentional failure to address any of the department's shortcomings with regard to police misconduct are the numerous and well-documented violations of Constitutional rights.  The Sheffield Police Department has known of these civil rights violations for years.  The long-held custom of violating the civil rights of citizens and the failure to remedy these violations directly resulted in the wrongful arrest of Mr. Fuqua.
>
> 24.  The effect of the illegal search and seizure, the failure of the Sheffield Police Department to quickly remedy the situation as outlined above, the Sheffield Police Department's longstanding custom of violating citizens' Constitutional rights, and the Sheffield Police Department's deliberate indifference in violating citizens' Constitutional rights all deprived the Plaintiff of his statutory and constitutional rights granted by the Due Process Clause, the Fourth Amendment to the United States, and Article I, Sec. 5 of the Constitution of Alabama.

(Doc. 1 at 6-7 ¶¶ 21, 24).

Plaintiff thus alleges that the City's failure to address police misconduct led to

defendant Hess' actions against plaintiff.  "[A] municipality's failure to correct the

constitutionally offensive actions of its employees can rise to the level of a custom

or policy 'if the municipality tacitly authorizes these actions or displays deliberate

indifference' towards the misconduct."  *Griffin v. City of Opa-Locka*, 261 F.3d 1295,

1308 (11th Cir. 2001) (quoting *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir.

1987)).  To establish that the City has such a custom or policy, plaintiff must allege "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (internal quotations and citations omitted). Plaintiff must allege "a longstanding and widespread practice [that] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Id.*

Plaintiff's complaint sets out two incidents in which the City's police officers, not even Hess, allegedly violated arrestees' constitutional rights, and the alleged incidents occurred after the events made the basis of plaintiff's complaint.  This is insufficient to demonstrate a custom or policy.  *See Whittier v. City of Sunrise*, 395 Fed.Appx. 648, 650 (11th Cir. 2010) (rejecting custom and policy claim in which plaintiff identified three prior instances of police officers failing to knock and announce, holding "Three violations do not a custom make."); *Burnette v. Ciolino*, 750 F. Supp. 1562, 1564-65 (M.D.Fla. 1990) (five incidents of police shootings insufficient to establish police custom under § 1983); *Graddy v. City of Tampa*, 2014 WL 272777, at *8 (M.D.Fla. Jan. 23, 2014) (four prior taser usage incidents inadequate); *see also Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir.

1986) ("Normally random acts or isolated incidents are insufficient to establish a custom or policy."). Not only do the allegations of only two other incidents fail to state a claim of a custom or policy, but the incidents occurred <u>after</u> plaintiff's encounter with Hess. A municipality cannot be said to have a longstanding and widespread practice deemed known and authorized by the policymaking officials, as a "moving force" behind a constitutional violation, when the only allegations of similar instances have occurred after a plaintiff's incident. *See MacMillan v. Roddenberry*, 432 Fed.Appx. 890, 896 (11th Cir. 2011); *Smith v. City of Huntsville*, 2016 WL 572467, at *7 (N.D.Ala. Sept. 30, 2016); *Scott v. City of Lanett*, 845 F.Supp. 815, 820 (M.D.Ala. 1993) ("Incidents that occurred after Scott was arrested are not relevant to prove the policies that existed at the time in question.").

Apart from the allegations about the two other incidents, plaintiff alleges that the City of Sheffield "has a long-held custom of and has long been deliberately indifferent to violating its citizens' rights," that "the Sheffield Police Department has long been improperly managed" and has intentionally failed to address any shortcomings with regard to police misconduct, and that there are "numerous and well-documented violations of Constitutional rights." (Doc. 1 at 6 ¶ 21). However, these allegations are wholly conclusory and provide no specifics to allow the court

to draw an inference that the City is liable for any violation of plaintiff's Constitutional rights based on a custom or policy.

The allegations in plaintiff's complaint fail to set out sufficient facts to impose municipal liability on the City of Sheffield based on a custom or policy.[4]  However, plaintiff will be afforded an opportunity to amend his complaint to set out enough facts to state a claim of municipal liability based on custom or policy that can withstand any renewed motion to dismiss.

### 2.    Count Eight

The City contends plaintiff has failed to plead sufficient facts to support a claim of failure to train or supervise.  Plaintiff has alleged, "[i]n order to properly effectuate a legal search and seizure, sufficient training is required as all properly trained police officers know all stops, searches, and seizures are made in anticipation of litigation/prosecution, which requires following the strict mandates of due process." (Doc. 1 at 13 ¶ 58).  Plaintiff also alleges that the City's failure to train is demonstrated by the two alleged unlawful arrests and uses of excessive force that occurred after plaintiff's arrest.  (*Id.* ¶ 59).  Recognizing that the "failure to train" and "failure to supervise" are often interrelated omissions, the Eleventh Circuit explained

---

[4]  To the extent plaintiff has attempted to "flesh out" his claims with arguments and allegations in his response to the motions to dismiss, the court will not consider these arguments or allegations, as they are not contained in the complaint itself.

that the court's proper focus in addressing these interrelated claims is on the "element common to both claims: the alleged failure to train." *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1555 (11th Cir. 1989).

In *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989), the Supreme Court stated that a municipality can be held liable under § 1983 for failure to train its police officers.  However, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.*  That is, "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality–a 'policy' as defined by our prior cases–can a city be liable for such a failure under § 1983." *Id.* at 389.  Further, the Supreme Court also has stated that a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

"[T]here are only 'limited circumstances' in which an allegation of a failure to train . . . can be the basis for liability under § 1983," and "these 'limited circumstances' occur only where the municipality inadequately trains . . . its employees, this failure to train . . . is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citations omitted).  "Failure to train can amount to

deliberate indifference when the need for more or different training is obvious . . . and when the failure to train is likely to result in the violation of a constitutional right." *Belcher v. City of Foley*, 30 F.3d 1390, 1397-98 (11th Cir. 1994) (citations omitted). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quoting *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997)).

To establish deliberate indifference, a plaintiff must show "that the municipality knew of a need to train . . . in a particular area and the municipality made a deliberate choice not to take any action." *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1293 (11th Cir. 2009).   A plaintiff may establish deliberate indifference in two ways: by showing "[a] pattern of similar constitutional violations by untrained employees" ("prior pattern liability," which is the normal way of showing deliberate indifference) or by showing that the need to train was "obvious" despite the lack of prior similar constitutional violations ("single incident liability," available in a narrow set of circumstances).  *Connick*, 563 U.S. at 62.  "'Where the [officer's] proper response . . . is obvious to all without training or supervision, then the failure to train or supervise'" does not generally show deliberate indifference. *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 490 (11th Cir. 1997) (quoting with

approval *Walker v. City of New York*, 974 F.2d 293, 299-300 (2d Cir. 1992), *cert.*

*denied*, 507 U.S. 972 (1993)).  Therefore, a city may "rely on the common sense of

its [police officers] not to engage in . . . criminal conduct," but "a pattern of known

misconduct . . . may be sufficient to change reasonable reliance [on the officers'

common sense] into deliberate indifference."  *Floyd v. Waiters*, 133 F.3d 786, 796

(11th Cir. 1998), *vacated on other grounds by* 525 U.S. 802 (1998), *reinstated by* 171

F.3d 1264 (11th Cir. 1999).

### Prior Pattern Liability

With that background, the court turns to the complaint in the instant case.  In

Count Eight, plaintiff alleges that the City of Sheffield failed to provide its officers

with adequate training in effectuating legal searches and seizures.  Plaintiff also

alleges that "the City of Sheffield has a long-held custom of, and has long been

deliberately indifferent, to violating its citizens' rights, as shown by the above-listed

incidents." (Doc. 1 at 13 ¶ 59).  He further claims that this custom or policy existed

prior to the incident with plaintiff and "is widely pervasive as both criminal and

juvenile cases in both state and city courts are routinely dismissed for Fourth

Amendment violations." (*Id.* at 14 ¶ 59).  The court reiterates that the mere fact that

officers were inadequately trained does not implicate municipal liability; to be

deliberately indifferent, the City must have had notice prior to the acts made the basis

of this suit of a need to train or supervise, and yet, failed to train and supervise despite that notice.

As to prior pattern liability, the complaint states no well-pled facts supporting a prior pattern of similar constitutional violations by untrained and/or unsupervised employees.  Plaintiff makes only a general, conclusory allegation that there is a widely pervasive custom of violating citizens' Constitutional rights, without providing any factual detail about any cases allegedly dismissed for Fourth Amendment violations.  To provide the notice of a need to train in a particular area that is necessary for deliberate indifference, prior constitutional violations must be similar in nature to the one made the basis of the suit.  *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1328 (11th Cir. 2015) (stating that "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary" and requiring facts to establish notice instead of conclusory allegations that notice existed); *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005) (finding no municipal liability when the plaintiff could not show that any other prior complaints of excessive force involved "factual scenarios that were substantially similar" to the incident in that suit).

The general allegation of Fourth Amendment violations in the time frame before and after plaintiff's encounter with Hess is not a well-pled fact. Therefore, the court find that the complaint does not sufficiently allege that the City had notice of a need to train or supervise based on a prior pattern of similar constitutional violations. In addition, plaintiff's alleged constitutional deprivation on September 13, 2014, by Hess does not mean that the City must have failed to train, discipline, and supervise prior to that date, and must be guilty of deliberate indifference.  The Supreme Court of the United States has instructed that "adequately trained officers occasionally make mistakes" and "the fact that they do says little about the training program. . . ." *City of Canton*, 489 U.S. at 391.  Therefore, mere allegations of constitutional deprivation by an officer, standing alone, do not support a claim against a city for failure to train claim or for deliberate indifference.  Such an argument is, in effect, calling for the imposition of *respondeat superior* liability, which, as discussed above, is a theory of liability that the Supreme Court has repeatedly refused to impose under § 1983 for municipal liability.  Instead, a well pleaded complaint against a city must allege that the city is liable because of its own illegal actions.

*Single-Incident Liability*

Even if the complaint does not sufficiently allege a prior pattern, the court should consider whether it sufficiently states a claim against the City for

single-incident liability. The Supreme Court in *City of Canton* first hypothesized this theory as viable when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." 489 U.S. at 390. It gave as an example in dictum the "obvious" need "to train officers in the constitutional limitations on the use of deadly force." *See id.* at n.10. Then, in *Bryan Cty.*, the Supreme Court provided the following clarification of hypothetical single-incident liability:

> In leaving open in *Canton* the possibility that a plaintiff might succeed in carrying a failure-to-train claim without showing a pattern of constitutional violations, we simply hypothesized that, in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations. The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle the situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected "deliberate indifference" to the obvious consequence of the policymakers' choice-namely, a violation of a specific constitutional or statutory right.

520 U.S. at 409.

The court recognizes the narrowness of this "so obvious" exception and the reluctance of the Eleventh Circuit to extend failure-to-train liability to other scenarios. *See Borton v. City of Dothan*, 734 F. Supp. 2d 1237, 1256 (M.D.Ala. 2010) (citing, e.g., *Lewis*, 561 F.3d at1293, and *Gold*, 151 F.3d at 1352, as examples

of the Eleventh Circuit's repeated refusal to extend failure to train liability beyond the Supreme Court's deadly force example).[5]   As stated previously, to recover on a failure to supervise or failure to train claim, a plaintiff must show that the failure to train or supervise its officers was a moving force behind the constitutional violation.   To be a moving force, the failure to train or other custom or practice must have a causal relationship with the constitutional injury suffered.   *See Owens v. City of Atlanta*, 780 F.2d 1564, 1567 (11th Cir. 1986).

Notwithstanding plaintiff's failure to recount specific previous constitutional violations, "a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Bryan Cty.*, 520 U.S. at 409.   To the extent plaintiff argues that daily confrontations between citizens and police officers mean that "constitutional violations are inevitably going to occur" if officers are not properly trained (Doc. 19, Plaintiff's Brief, at 7), the court finds that the failure to provide additional training to police officers, who are, presumably, already versed in the constitutional limits of their actions, fails to amount to a situation in which "the unconstitutional

---

[5] The Eleventh Circuit has held that the use of a taser is "moderate, non-lethal force." *Buckley v. Haddock*, 292 Fed.Appx. 791, 795 (11th Cir. 2008).   Plaintiff has alleged only that the use of a taser on him rendered him weak and unable to walk straight. (Doc. 1 at 3 ¶ 7).   He has not alleged any more serious injury or lasting effects from the use of the taser on him.

consequences of failing to train could be so patently obvious" that the City could be liable without proof of a preexisting pattern of violations. *See Connick*, 563 U.S. at 64 (no liability for failing to train prosecutors regarding *Brady* violations because, *inter alia*, the prosecutors "were familiar with the general *Brady* rule," so failure to train on a specific factual scenario failed to assert a showing of deliberate indifference). Plaintiff argues that Hess "clearly lacked any training as to what amounts to reasonable force" (Doc. 19 at 7) simply because he allegedly used excessive force on plaintiff. However, this argument is nothing more than *ipse dixit*. Because plaintiff has failed to plead facts showing that the alleged failure to provide sufficient training in stops, seizures and arrests was the "moving force" behind the incident between plaintiff and Hess, this claim against the City is due to be dismissed as it is currently pled.

## III.  R. Marshall Hess

### A.    Excessive Force (Count Two)

Defendant Hess seeks dismissal of plaintiff's claim for use of excessive force. As grounds, he asserts that plaintiff invokes the Fourteenth Amendment as the basis for his § 1983 claim; however, the Supreme Court has made it clear that any such claim arises under the Fourth Amendment rather than the Fourteenth Amendment.

Plaintiff asks the court to read his complaint in its entirety and contends he has invoked the Fourth Amendment as the basis for the excessive force claim.

In the "Jurisdiction" section of the complaint, plaintiff invokes federal subject matter jurisdiction "to obtain redress for the deprivation of rights guaranteed by the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States pursuant to 42 U.S.C. § 1983." (Doc. 1 at 1). However, Count Two is entitled "Excessive Force Under the Fourteenth Amendment" (*id.* at 7), and plaintiff alleges "Officer Hess used excessive force in violation of the Fourteenth Amendment." (*Id.* at 8). Nevertheless, plaintiff also alleges Hess "deprived the Plaintiff of his statutory and constitutional rights granted by the Due Process Clause [and] the Fourth Amendment to the United States." (*Id.*).

It is apparent from reading the complaint and plaintiff's response to the motion to dismiss that plaintiff did not proofread the complaint before it was filed. For instance, the law is settled that a claim of excessive force during arrest arises solely under the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). However, plaintiff invokes the Due Process Clause and the Fourteenth Amendment as the partial basis for the excessive force claim. In addition, plaintiff refers to the Eighth Amendment in the "Jurisdiction" section of the complaint but makes no claim under the Eighth Amendment. Indeed, because plaintiff was not a convicted prisoner

at the time of the events made the basis of this complaint, no Eighth Amendment claim can be made. *See D'Aguanno v. Gallagher*, 50 F.3d 877 (11th Cir. 1995); *United States v. Myers*, 972 F.2d 1566 (11th Cir. 1992). Another example of the ambiguity of plaintiff's complaint is found with regard to Count Four. While plaintiff states that the City of Sheffield is a defendant only as to Counts One, Two, Three and Eight (Doc. 1 at 2), he also states in Count Four that the claim is being brought against the City (*id.* at 10 ¶ 38). These discrepancies are confusing to the Court and make it difficult to discern which defendants are sued in which counts.

Because plaintiff is being afforded an opportunity to amend his complaint with regard to the City of Sheffield as a defendant in Counts One, Two, Three and Eight, he also must revise the complaint and Count Two to reflect the proper constitutional basis for the excessive force claim.

### B.    Outrage (Count Seven)

In support of his claim for outrage, plaintiff alleges that Hess breached a duty "to responsibly and ethically serve the citizens of Sheffield" by the unlawful seizure and arrest of plaintiff and by "willfully and intentionally disregard[ing]" a subpoena to appear at plaintiff's trial on the charges. (Doc. 1 at 12). He also claims that "Officer Hess' complete indifference to the legal process, his indifference to the safety of the Plaintiff, and his indifference to ensuring the charges against the

Plaintiff were warranted is an outrageous violation of the moral and, more importantly, legal code by which we all live." (*Id.*).

To establish outrage, plaintiff must show that (1) Hess "either intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from [his] conduct;" (2) the conduct in question "was extreme and outrageous;" and (3) the "conduct caused emotional distress so severe that no reasonable person could be expected to endure it." *Stabler v. City of Mobile*, 844 So.2d 555, 560 (Ala. 2002). "By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *American Road Serv. Co. v. Inmon*, 394 So.2d 361, 365 (Ala. 1980). Thus, "outrage is a very limited cause of action that is available only in the most egregious circumstances." *Thomas v. BSE Indus. Contractors, Inc.*, 624 So.2d 1041, 1044 (Ala. 1993).

In Alabama, the tort of outrage has been limited to three circumstances: "wrongful conduct in the family-burial context," "barbaric methods employed to coerce an insurance settlement," and "egregious sexual harassment." *Potts v. Hayes*, 771 So.2d 462, 465 (Ala. 2000). *See also Ex parte Bole*, 103 So.3d 40, 53 (Ala. 2012) (recognizing very limited applicability of tort of outrage). The Alabama Supreme Court has suggested that the tort of outrage may be actionable in cases also

alleging malicious prosecution and false imprisonment, where the plaintiff has alleged that he suffered emotional distress. *See Woodruff v. City of Tuscaloosa*, 101 So.3d 749, 755 (Ala. 2012).

The Eleventh Circuit has described the use of a taser as "nonlethal" force in addressing excessive force claims against police officers. *See Smith v. LePage*, 834 F.3d 1285, 1295 (11th Cir. 2016). Although a taser has a "unique capability to cause high levels of pain without long-term injury, 'we have not categorized the taser as an implement of force whose use establishes, as a matter of law, more than *de minimis* injury.'" *Hollingsworth v. City of St. Ann*, 800 F.3d 985, 990-91 (8th Cir. 2015). In *Manning v. Mason*, 2011 WL 1832539 (M.D.Ala. May 13, 2011), the court dismissed an outrage claim brought by a plaintiff who was tasered during an arrest. In *Tinker v. Beasley*, 429 F.3d 1324 (11th Cir. 2005), the plaintiff contended defendants subjected her to outrageous conduct by arresting her and questioning her about a murder, after falsely telling her that her attorney had quit. The plaintiff in *Tinker* was threatened with the death penalty but never charged, and she was released from custody after the perpetrator was caught. The Eleventh Circuit determined that the conduct, while "generally reprehensible," failed to support a claim of outrage because the officers were falsely informing Tinker about her legal representation "with a view to accomplishing something within the bounds of their role as police officers." *Id.* at 1330, 1331. It distinguished the case of *Woodley v. City of Jemison*, 770 So.2d

1093 (Ala.Civ.App. 1999), in which a police officer, who made obscene phone calls to and otherwise harassed a woman by way of knowledge he gained through being a police officer, was found to have committed outrage through abuse of the public trust to act outside the bounds of his position. It also distinguished the case of *McMillian v. Johnson*, 878 F.Supp. 1473 (M.D.Ala. 1995), in which a police officer was found to have acted outrageously where a pretrial detainee, charged with capital murder and later exonerated, had been temporarily held on death row for the purposes of coercing a confession. The plaintiff in *Tinker* was never formally charged with murder and was kept at the county jail and only verbally threatened with the death penalty.

Taking plaintiff's allegations as true, the court finds the conduct alleged in the instant case does not meet the high standard set out above. These are not the sort of allegations which would justify the court in extending the reach of the tort of outrage, as suggested in *Woodruff*. Therefore, the claim for outrage is due to be dismissed with prejudice.

## CONCLUSION

Based on the foregoing, it is ORDERED, ADJUDGED and DECREED:

(1) that plaintiff's claims in this action against the entity named "the Sheffield Police Department" are DISMISSED WITH PREJUDICE for failing to state a claim against an entity subject to suit under 42 U.S.C. § 1983;

(2) that plaintiff's claims for punitive damages against the City of Sheffield are DISMISSED WITH PREJUDICE; and

(3) that plaintiff's claim against defendant Hess for outrage is DISMISSED WITH PREJUDICE for failure to state a claim upon which relief may be granted.

Plaintiff shall have fourteen (14) days from the date of entry of this order in which to file an amended complaint which corrects the deficiencies noted in this Memorandum Opinion with respect to Counts One, Two, Three and Eight against the City of Sheffield and otherwise.  Plaintiff's counsel is admonished to be sure not to include in any such amendment any claims dismissed with prejudice by this order. Additionally, plaintiff's counsel should carefully consider the arguments advanced regarding the adequacy of the pleadings and include in the amended complaint actual factual allegations which make the claims plausible rather than mere legal conclusions.

DONE and ORDERED this 18th day of January, 2017.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE